## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED MERCHANDISE WHOLESALE, INC., a New York Corporation, and MY IMPORTS USA LLC, a New Jersey Limited Liability Company,<br><br>                    Plaintiffs,<br>vs.<br>JMD ALL STAR IMPEX INC., a New Jersey Corporation, JMD ALL STAR IMPORT EXPORT INCORPORATED, a New Jersey Corporation, and AJAY SARIN,<br><br>                    Defendants. | Civil Action No.:<br><br><br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

Plaintiffs, United Merchandise Wholesale, Inc., a New York corporation, and My Imports USA LLC, a New Jersey limited liability company, as and for their Complaint against defendants JMD All Star Impex Inc., JMD All Star Import Export Incorporated and Ajay Sarin, state the following:

### NATURE OF THE ACTION

1.    Plaintiffs bring this action to protect their rights in and to the duly registered trademark "Ultra Max."

2.    Defendants, who have previously admitted to counterfeiting other products, are currently selling counterfeit products, including razors, to the public under the name "Ultra Z," a clear knockoff of Plaintiffs' products.

3.   In fact, the "Ultra Z" razors are being packaged in identical packaging as Plaintiffs' Ultra Max products.

4.   Defendants' actions have caused Plaintiffs to suffer significant and irreparable harm.

5.   Furthermore, Defendants' infringement on Plaintiffs' trademark has deprived Plaintiffs of the right to control their marks and the quality of the products associated with those marks.

6.   The "Ultra Z" products are clear counterfeits of Plaintiffs' products, which violate Federal and State law and Defendants' unlawful conduct must be immediately enjoined.

## THE PARTIES

7.   Plaintiff    United    Merchandise    Wholesale,    Inc. ("United") is a New York corporation with a principal place of business located at 11 Timber Ridge Drive, Commack, New York. Non-party Abrahim Ibrahimi is the sole shareholder and registered agent of United.

8.   Plaintiff My Imports USA LLC ("My Imports") is a New Jersey limited liability company with a principal place of business located at 75 Ethel Road, Edison, New Jersey.   My Imports is owned by Abrahim Ibrahimi (50%) and non-party Maq Capital Management, LLC (50%).   Non-party, Fahim Ibrahimi, is the General Manager of United and the President of My Imports.

- 2 -

9.   Defendant JMD All Star Impex Inc. is a New Jersey corporation with a principal place of business located at 98 Distribution Boulevard, Edison, New Jersey.

10.   Defendant JMD All Star Import Export Incorporated is a New Jersey corporation with a principal place of business located at 98 Distribution Boulevard, Edison, New Jersey.   JMD All Star Import Export Incorporated's corporate status was revoked for failure to pay annual reports in 2009, and the reinstatement process is currently pending.

11.   Defendant Ajay Sarin ("Mr. Sarin") (together with JMD Allstar Impex Inc. and JMD Allstar Import Export Incorporated, "Defendants") is a resident of New Jersey with an address at 200 Midwood Way, Colonia, New Jersey.   Mr. Sarin is the registered agent and Chief Executive Officer of both JMD All Star Impex Inc. and JMD All Star Import Export Incorporated.   True and accurate copies of Business Status Reports from the State of New Jersey for JMD All Star Impex Inc. and JMD All Start Import Export Incorporated are attached hereto as **Exhibits A and B**, respectively.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because of the claims asserted herein arising under the Lanham Act, 15 U.S.C. §1111, *et seq.*

13.   This Court can also exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) insofar as Plaintiffs' state law claims derive from a common nucleus of operative facts as its federal law claims and form part of the same case or controversy.

14.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because defendants reside in and operate their principal places of business in the State of New Jersey.

**FACTS COMMON TO ALL COUNTS**

**A.    The Ultra Max Trademark.**

15.   United is the owner of the registered trademark "Ultra Max."

16.   United's "Ultra Max" trademark was registered with the United States Trademark and Patent Office on or about October 9, 2012, and bears registration number 4221706.  Attached hereto as **Exhibit C** is a true and accurate copy of the Certificate of Registration issued by the United States Patent and Trademark Office.

17.   Though the owner of the Ultra Max trademark is listed as "Unitred Merchadise Wholesale, Inc.," this is a clerical spelling error that United is in the process of correcting. United has always been the owner of the registered Ultra Max mark.

18.   The Ultra Max trademark encompasses the following goods: Blades for electric razors; cases for razors; disposable razors; razor blades; razors; razors and razor blades; safety razors; and straight razors.   See Ex. C.   Attached hereto as **Exhibit D** is a true and accurate copy of color pictures of Ultra Max 2 Pack Razors and "Ultra Z" 2 Pack Razors; attached hereto as **Exhibit E** is a true and accurate copy of color pictures of Ultra Max Razor for Ladies and "Ultra Z" Razor for Ladies.

19.   The Ultra Max registration was duly and legally issued, is valid and subsisting.

20.   At all times since registration, United has maintained its right to exercise control over the nature and quality of the goods associated with the Ultra Max mark.

21.   Plaintiffs have made substantial monetary expenditures in developing, advertising, and promoting their "Ultra Max" razors.

22.   The packaging for Plaintiffs' Ultra Max razors has a unique physical appearance that has become distinctive as trade dress to purchasers and users of Plaintiffs' Ultra Max razors. See Exs. D and E.

23.   In or about April 2013, United licensed the Ultra Max trademark to My Imports for My Imports' use.

24.   United has maintained its right to exercise control over the nature and quality of the goods sold by My Imports under the licensed mark.

25.   My Imports is an importer and wholesaler of general merchandise that supplies products to dollar stores, discount stores, and wholesalers across the United States.   My Imports sells more than 2,500 products, including, but not limited to, products branded with My Imports' own private labels.

26.   My Imports operates a 120,000 square foot distribution center in Edison, New Jersey, along with a 5,000 square foot showroom located within the distribution center.   My Imports also has a west coast warehouse and showroom located in Bell, California.

27.   Plaintiffs do not manufacture the products they import and wholesale.   Instead, Plaintiffs source production of their products from various authorized manufacturers around the world, including manufacturers located in the People's Republic of China.

28.   Every plant that manufactures products for Plaintiffs is visited, reviewed, and pre-approved by Plaintiffs to ensure the quality of the goods produced in association with United's marks.

**B.   Defendants' Infringement of the Ultra Max Trademark.**

29.   Defendants market a line of razors under the name "Ultra Z."  See Exs. D and E ("distributed by: JMD ALL STAR, Edison N.J. 08817").   Plaintiffs will make exemplars of the Ultra Max and "Ultra Z" products referenced herein available to the Court at its request.

30.   The "Ultra Z" razors come in packaging that, but for the name of the razors and the identity of the distributor, is identical to the packaging of Plaintiffs' Ultra Max razors.  See Exs. D and E.

31.   For instance, the front of the packaging for Ultra Max 2 Pack Razors and "Ultra Z" 2 Pack Razors both contain the following:

a.   A blue, foil background;

b.   In the top left corner, the name of the brand (i.e., Ultra Max and "Ultra Z") in metallic, reflective coloring;

c.   In the top right corner, the phrase "6 Blades!" in white;

d.   Along the left side, in letters rotated ninety degrees to the left, the phrase "2 PACK RAZORS" in white;

e.   In the bottom left corner, the phrase "1 + 1 BONUS PACK!" in white with black and yellow outlines for the text "1 + 1" and in black type on a yellow oval background for the text "BONUS PACK!";

f.   Along the right side, with the text rotated ninety degrees to the left, the phrase

- 7 -

"INNOVATIVE EXTRA STURDY ULTRA SMOOTH & COMFORTABLE" in white text;

g.   In the center, the phrase "6 BLADE RAZORS" in black text over a metallic yellow stripe;

h.   In the center, the phrases "RAZOR FOR MEN" and "WITH ALOE STRIP" in white text over a dark blue background;

i.   In the center, an illustration of a blue razor with six blades with a yellow drop in the left corner, along with a circular blow-up illustration above the razor illustration, with a yellow arrow pointing from the blow-up illustration to the razor illustration.

[Compare Ex. D.]

32.   The back of the packaging for Ultra Max 2 Pack Razors and "Ultra Z" 2 Pack Razors are similarly identical, including bearing identical text descriptions of the razors contained therein.  Compare Ex. D.

33.   In fact, the packaging for all of the "Ultra Z" razors is identical to the packaging for Plaintiffs' Ultra Max razors. Compare Ex. E.

34.   Accordingly, the "Ultra Z" products are clear counterfeits of Plaintiffs' products, which violate Federal and State law.

**C.   Defendants' Previous Counterfeiting Operations.**

35.   Defendants have previously admitted to the counterfeiting of marks and trade dress.

36.   In August 2006, Colgate-Palmolive Company filed a lawsuit in the United States District Court for the District of New Jersey, Case No. 06-2857, against JMD All-Star Import and Export, Inc. and Ajay Sarin.   Attached hereto as **Exhibit F** is a true and accurate copy of the Colgate Complaint.

37.   Colgate alleged federal trademark counterfeiting, trademark infringement, unfair competition, and dilution claims against defendants.

38.   On December 21, 2009, a Consent Judgment and Permanent Injunction was entered JMD and Sarin.   Attached hereto as **Exhibit G** is a true and accurate copy of the December 21, 2009, Consent Judgment.

39.   Defendants admitted to, *inter alia*, the ordering, purchase, distribution, advertisement, promotion and sale of counterfeit Colgate products and infringement on Colgate's marks, registrations and trade dress, including the sale of "COLDDATE" toothpaste.

40.   On June 10, 2013, Dollar Tree Stores, Inc. also filed a lawsuit against Sarin in the United States District Court for the Eastern District of New York, Case No. 13-3304.   Attached hereto as **Exhibit H** is a true and accurate copy of the Dollar Tree Complaint.

41. Dollar Tree similarly alleged violations of Federal and New York trademark and infringement laws, including use of a mark confusingly similar to a mark owned by Dollar Tree.

## COUNT ONE

### (Injunctive Relief – 15 U.S.C. §1116)

42. Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

43. Plaintiffs' "Ultra Max" trademark is distinctive and of incalculable value, and is associated in the public mind with Plaintiffs' goods of the highest quality.

44. Plaintiffs are entitled to control the "Ultra Max" mark and the quality of the goods associated with the "Ultra Max" mark.

45. Defendants' use of the "Ultra Z" mark on or in connection with its razors infringes on Plaintiffs' "Ultra Max" mark, and is likely to cause confusion, to cause mistake, or to deceive.

46. Plaintiffs are entitled to injunctive relief to prevent further infringement of their rights to the "Ultra Max" trademark.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

- 10 -

A.   The issuance of a temporary injunction and preliminary and permanent injunction enjoining Defendant, any of its respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or substantial part by Defendant, who receives actual notice of the order by personal service or otherwise, from:

(i)   Using any of Plaintiffs' trademarks or trade names or trade dress, including but not limited to those identified in the Verified Complaint above, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks, including but not limited the use of the "Ultra Z" mark on Defendants' lines of razors and related products, or trade names or trade dress in or as part of any design or logo or otherwise on or in connection with any goods or on or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination or distribution of any goods;

(ii)  Using any of Plaintiffs' trademarks or trade names or trade dress, including but not limited to those identified in the Verified Complaint above, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks, including but not limited the use of the "Ultra Z" mark on Defendants' lines of razors and related products, or trade names or trade dress in or as part of any logo, business name, trade name, website identifier, website address, domain name, e-mail address or in any other means of identification;

(iii)   Processing, packaging, importing or transporting
        any product bearing any of Plaintiffs' trademarks
        or trade names or trade dress or any mark that is
        a     simulation,    reproduction,   copy,   colorable
        imitation or confusingly similar variation of any
        of   Plaintiffs'   trademarks,   including   but   not
        limited the use of the "Ultra Z" mark on
        Defendants' lines of razors and related products,
        or trade names or trade dress;

(iv)    Using any false designation of origin or false
        description  (including,  without  limitation,  any
        letters or symbols), or performing any act, which
        can, or is likely to, lead members of the trade
        or   public   to   believe   that   the   Defendants   is
        associated  with  Plaintiffs  or  that  any  product
        imported,  manufactured,  distributed  or  sold  by
        the  Defendants  is  in  any  manner  associated  or
        connected   with   Plaintiffs,   or   is   authorized,
        licensed,   sponsored   or   otherwise   approved   by
        Plaintiffs trademarks, including but not limited
        the  use  of  the  "Ultra  Z"  mark  on  Defendants'
        lines of razors and related products;

(v)     Purchasing any of Plaintiffs' trademarks or trade
        names  or  trade  dress  in  connection  with  any
        sponsored  advertising  on  the  Internet  or  using
        any of Plaintiffs' trademarks in any source code
        or   metatags   or   otherwise   using   Plaintiffs'
        trademarks  or  trade  names  or  trade  dress  such
        that a search for Plaintiffs on the Internet will
        cause  any  domain  name,  website  or  advertisement
        for  Plaintiffs,  or  any  company  or  business  that
        is  owned  or  controlled  by  either  of  them,  to
        appear in search results;

(vi)    Utilizing any of Plaintiffs' trademarks or trade
        names  or  domain  names  in  connection  with  the
        sending of any emails;

(vii)   Engaging   in   any   other   activity   constituting
        unfair    competition    with    Plaintiffs,    or
        constituting   any   infringement   of   any   of
        Plaintiffs' trademarks or trade names or domain
        names;

- 12 -

(viii) Engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Plaintiffs' trademarks or trade names or trade dress;

(ix) Applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of any of Plaintiffs' trademarks or trade names or trade dress or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' trademarks or trade names; and

(x) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above or taking any action that contributes to any of the activities referred to in subparagraphs (i) through (ix) above, or any other activity that consists of or contributes to the sale of counterfeit or infringing products bearing any of Plaintiffs' trademarks or trade names or domain names, including but not limited to building or creating websites for others, hosting websites for others, providing technical or other support for any e-commerce transactions that concern or relate to the sale of counterfeit or infringing goods.

B.   That Defendants be ordered to, at their own expense, immediately deliver up to Plaintiffs their entire inventory of goods bearing any of Plaintiffs' marks.

C.   That Defendants, at their own expense, recall any and all products that bear any copies or counterfeits of any of Plaintiffs' trademarks, including but not limited the use of the "Ultra Z" mark on Defendants' lines of razors and related products, from any distributors, retailers, vendors or others to

whom Defendant has distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof upon them.

D.   That Defendants deliver to Plaintiffs' attorney, within five (5) days after service of judgment with notice of entry thereof upon it, all goods, labels, tags, signs, stationary, prints, packages, promotional and marketing materials, advertisements and other materials; (i) currently in their possession or under their control or (ii) recalled by the Defendants pursuant to any order of the Court or otherwise, incorporating, featuring or bearing any of Plaintiffs' trademarks or trade names or domain names or that include any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' trademarks including but not limited the use of the "Ultra Z" mark on Defendants' lines of razors and related products, or trade names or trade dress, and all plates, molds, matrices and other means of making same, and that Plaintiffs be permitted to destroy all such goods without compensation to Defendants.

E.   That Defendants preserve all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents, whether in electronic format or

- 14 -

otherwise, concerning all transactions relating to their sale of any goods bearing or including any copies or counterfeits of any of Plaintiffs' trademarks, including but not limited the use of the "Ultra Z" mark on Defendants' lines of razors and related products, or trade names or trade dress or that otherwise infringe on any of Plaintiffs' trademarks or trade names or trade dress, and that all such materials be made available to Plaintiffs for review, inspection and copying on Plaintiffs' request.

F.   That Defendants provide Plaintiffs with the names, addresses and all other contact information in their possession (e.g., telephone numbers, fax numbers, etc.) for: (1) the source of all products that bear or include counterfeits, including but not limited the use of the "Ultra Z" mark on Defendants' lines of razors and related products, or copies of any of Plaintiffs' trademarks or trade names or trade dress or that otherwise are intended to copy Plaintiffs' products, including all manufacturers, distributors and/or suppliers; and (2) the purchasers or customers of all products that bear or include counterfeits, including but not limited those products with the "Ultra Z" mark.

G.   The Defendants shall file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in

writing under oath, setting forth in detail the manner and form in which they have complied with all of the above.

H.   Awarding attorney's fees and costs; and

I.   Awarding such other relief as the Court may deem just, equitable and proper.

## COUNT TWO

### (Federal Trademark Infringement – 15 U.S.C. §1114(1))

47.   Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

48.   The acts of Defendants complained of herein constitute use in commerce of a mark which is a colorable imitation of United's federally registered mark in connection with the sale, offering for sale, distribution and advertising of competing goods and services in violation of 15 U.S.C. § 1114(1).

49.   Defendants' use of the "Ultra Z" mark on or in connection with such goods and services is likely to cause confusion, to cause mistake or to deceive.

50.   Defendants' acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Plaintiffs' rights in the "Ultra Max" mark and with intent to trade on Plaintiffs' goodwill in the "Ultra Max" mark.

51.   As a result of the foregoing alleged actions of Defendants, Defendants have been unjustly enriched, and Plaintiffs have been injured and damaged.   Unless the foregoing alleged actions of Defendants are enjoined, Plaintiffs will continue to suffer injury and damage.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A.   That Defendants account for and pay over to Plaintiffs three times the profits realized by Defendants from their infringement of Plaintiffs' trademarks.

B.   That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; trebled damages and/or increased profits as provided by 15 U.S.C. § 1117(a); and trebled profits or damages.

C.   That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.   That Plaintiffs be awarded their costs in this civil action, including reasonable attorney's fees and expenses, pursuant to 15 U.S.C. § 1117(a) and other applicable laws.

E.   Awarding such other relief as the Court may deem just, equitable, and proper.

## COUNT THREE

### (Federal Unfair Competition – 15 U.S.C. § 1125(a))

52.  Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

53.  Defendants' use of the "Ultra Z" mark falsely indicates that Plaintiffs or their agents are connected with, sponsored by, affiliated with, or related to Defendants and their services, or that Defendants are connected with, sponsored by, affiliated with or related to Plaintiffs.

54.  Defendants' use of the "Ultra Z" mark is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and services.

55.  Upon information and belief, Defendants have willfully used and are willfully using the "Ultra Z" mark in connection with their services in deliberate and complete disregard for the damage it would cause to the reputation and goodwill of Plaintiffs.

56.  Defendants' use of the "Ultra Z" mark in connection with its goods and services allows Defendants unfairly to receive the benefit of Plaintiffs' goodwill, which Plaintiffs have established at great labor and expense, and further unlawfully allows defendants to gain acceptance of their goods

and services, based not on their own qualities, but on the reputation and goodwill of Plaintiffs.

57. The acts of Defendants complained of herein constitute unfair competition in violation of 15 U.S.C. § 1125(a).

58. As a result of the foregoing alleged actions of Defendants, Defendants have been unjustly enriched and Plaintiffs have been injured and damaged. Unless the foregoing alleged actions of Defendants are enjoined, Plaintiffs will continue to suffer injury and damage.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A. That Defendants account for and pay over to Plaintiffs three times the profits realized by Defendants from their unfair competition.

B. That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; and trebled damages and/or increased profits as provided by 15 U.S.C. § 1117(a).

C. That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D. That Plaintiffs be awarded its costs in this civil action, including reasonable attorney's fees and expenses, pursuant to 15 U.S.C. § 1117(a) and other applicable laws.

E.   Awarding such other relief as the Court may deem just, equitable, and proper.

## COUNT FOUR

### (State Trademark Infringement – <u>N.J.S.A.</u> 56:3-3.16)

59.  Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

60.  The acts of Defendants complained of herein constitute the use, without the consent of the owner, of a colorable imitation of Plaintiffs' "Ultra Max" trademark in connection with the sale, distribution, offering for sale, and/or advertising of goods or services.

61.  Defendants' use of the "Ultra Z" mark on or in connection with such goods or services is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services.

62.  Defendants' acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Plaintiffs' rights in the "Ultra Max" mark and with intent to trade on Plaintiffs' goodwill in the "Ultra Max" mark.

63.  As a result of the foregoing alleged actions of Defendants, Defendants have been unjustly enriched, and

Plaintiffs have been injured and damaged.   Unless the foregoing alleged actions of Defendants are enjoined, Plaintiffs will continue to suffer injury and damage.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A.   That Defendants account for and pay over to Plaintiffs three times the profits realized by Defendants from their infringement of Plaintiffs' trademarks.

B.   That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; and trebled profits or damages.

C.   That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.   That Plaintiffs be awarded their costs in this civil action, including reasonable attorney's fees and expenses.

E.   Awarding such other relief as the Court may deem just, equitable, and proper.

**COUNT FIVE**

**(State Unfair Competition – <u>N.J.S.A.</u> 56:4-1)**

64.   Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

65.   The acts of Defendants complained of herein constitute unfair competition in violation of N.J.S.A. 56:4-1.

66.   As a result of the foregoing alleged actions of Defendants, the Defendants have been unjustly enriched, and Plaintiffs have been injured and damaged.   Unless the foregoing alleged actions of Defendants are enjoined, Plaintiffs will continue to suffer injury and damage.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A.   That Defendants account for and pay over to Plaintiffs three times the profits realized by said Defendants from their unfair competition with Plaintiffs.

B.   That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; and trebled damages as provided by N.J.S.A. 56:4-2.

C.   That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.   That Plaintiffs be awarded its costs in this civil action, including reasonable attorneys' fees and expenses.

E.   That any bank accounts of Defendant shall be frozen pending payment to Plaintiffs as required hereunder and Plaintiffs may execute a judgment against any bank accounts of Defendant to obtain the amounts required to be paid to Plaintiffs hereunder.

F.    Awarding such other relief as the Court may deem just, equitable, and proper.

## COUNT SIX

### (State Unfair Competition – Common Law of New Jersey)

67.  Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

68.  The acts of Defendants complained of herein constitute unfair competition in violation of the common law of New Jersey.

69.  As a result of the foregoing alleged actions of Defendants, the Defendants have been unjustly enriched, and Plaintiffs have been injured and damaged.  Unless the foregoing alleged actions of Defendants are enjoined, Plaintiffs will continued to suffer injury and damage.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A.    That Defendant account for and pay over to Plaintiffs three times the profits realized by said Defendants from their unfair competition with Plaintiffs.

B.    That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; and trebled damages.

- 23 -

C.   That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.   That Plaintiffs be awarded its costs in this civil action, including reasonable attorneys' fees and expenses.

E.   Awarding such other relief as the Court may deem just, equitable, and proper.


### JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
*Attorneys for Plaintiffs*

By: _____
         Joseph P. LaSala

Dated:    June 30, 2015

- 24 -

## **VERIFICATION**

Fahim Ibrahimi, of full age, being duly sworn according to law, upon his oath deposes and says:

1.     I am the General Manager of United Wholesale Merchandise, Inc. and the President of My Imports USA LLC, and am authorized to make this verification on their behalf.

2.     The allegations set forth in this Verified Complaint are true to the best of my personal knowledge except as to those allegations which are made upon information and belief.

3.     As to the allegations made upon information and belief, I believe those to be true.

_____
Fahim Ibrahimi

Dated: June 25, 2015